IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCUS LEE RICARDO WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13CR170-1 |
| | ) | 1:14CV246 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation as to Ground One of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("Section 2255 Motion") (Docket Entry 16). For the reasons that follow, the Court should deny relief.

INTRODUCTION

This Court (per United States District Judge Catherine C. Eagles) entered judgment against Petitioner imposing, inter alia, consecutive prison terms of 14 and 60 months, following his guilty plea to possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket Entry 13; see also Docket Entry 19 (Plea Hrg. Tr.); Docket Entry 20 (Sent'g Hrg. Tr.).) Petitioner did not give notice of appeal. (See Docket Entries dated Dec. 16,

2013, to present.) He did, however, timely file his instant Section 2255 Motion. (Docket Entry 16.) The United States responded (Docket Entry 21) and Petitioner replied (Docket Entry 24). The undersigned Magistrate Judge recommended that the Court deny relief as to all claims, except Ground One, which asserts that Petitioner's counsel provided constitutionally ineffective assistance by failing to appeal; as to that claim, further action was deferred pending an evidentiary hearing (with new counsel appointed to represent Petitioner at said hearing). (Docket Entry 27.) That hearing now has occurred (see Docket Entry 30) and, based on the evidence presented and a review of the entire record, the Court should deny relief on Ground One.

DISCUSSION

Petitioner's Section 2255 Motion (which he signed under penalty of perjury (Docket Entry 16 at 6)) avers that, "[a]t the sentencing hearing and right after being sentenced, [Petitioner] turned to [his] lawyer and told him to please put [Petitioner's] direct appeal in and [Petitioner's lawyer] told [Petitioner] that [Petitioner's lawyer] would do so" (id., ¶ 12.A.; see also Docket Entry 24-1, ¶ 4 (stating under penalty of perjury: "I, Marcus Lee Ricardo Wilson, instructed my defense attorney Brian Aus at my sentencing hearing on several occassions [sic] to file a direct appeal."). Mr. Aus swore by affidavit to the contrary. (Docket

2

Entry 21-1, ¶ 4 ("At no time did [Petitioner] tell me that he wished to enter notice of appeal.").)

At the start of the evidentiary hearing, Petitioner (through his new appointed counsel) confirmed that Ground One asserted a claim based only on the failure of Mr. Aus to give notice of appeal after an instruction to do so (not based on any failure by Mr. Aus to consult about whether Petitioner should pursue an appeal). (See Docket Entry 30 at 4.)[1] Petitioner then took the stand. (See id. at 5.) On direct examination, he initially stated that, "prior to [his] sentencing, just prior to . . . [he] let [Mr. Aus] know that [he] wanted [Mr. Aus] to put an appeal in . . . ." (Id. at 6 (emphasis added).) Petitioner further averred that, based on that conversation, he expected Mr. Aus to file notice of appeal at the sentencing and that they would meet later to discuss the course of the appeal. (See id. at 7.) When questioned as to why he "ask[ed] Mr. Aus to enter [an] appeal," Petitioner responded "[b]ecause I wasn't really satisfied with my sentence." (Id. at 8.) However, Petitioner acknowledged that he had conveyed satisfaction with his sentence to Mr. Aus, although (according to Petitioner) he only did

---

[1] In any event, Petitioner's testimony (as described below) forecloses any failure-to-consult claim. Specifically, during the evidentiary hearing, Petitioner averred that Mr. Aus advised him about an appeal. (See Docket Entry 30 at 6 ("Me and Mr. Aus, we discussed the appeal situation . . . ."), 12 (testifying that Petitioner and Mr. Aus discussed an appeal prior to sentencing (while reviewing the Presentence Report) and Mr. Aus "was kind of like it wouldn't be no use for [Petitioner] to put in no appeal").)

3

so "after [he] felt like [Mr. Aus] left [him] with no other choice but to be satisfied." (Id. at 8-9; see also id. at 17 ("Q. Now, during your sentencing, Mr. Aus stated in his response that you seemed to be satisfied with your sentence. Are you saying that's not true? A. Yeah, that was true. Q. At the sentencing hearing. A. Yes, sir. Q. When did you become dissatisfied with your sentence? A. I had been dissatisfied. It's like every time I told him I wasn't satisfied he was just like he left me with no other choice but to take my time because he kept saying this, kept saying that. So I'm like, well, okay.").)[2]

On cross-examination, Petitioner testified that, immediately before the start of his sentencing hearing, while sitting in the courtroom, he "asked [Mr. Aus] to put [his] appeal in -- [his] notice of appeal -- [his] direct appeal and [Mr. Aus] said, 'We'll discuss that when I come see you.'" (Id. at 10.) Petitioner then denied "talk[ing] with Mr. Aus after [he] got [his] sentence[.]" (Id.) However, Petitioner promptly contradicted himself on that point, stating that he told Mr. Aus that he wanted to appeal the "case" he "had just got sentenced on . . . [b]ecause [he] felt like [he] was supposed to have got less time." (Id. at 11; see also id. at 14 ("Q. Now, you're saying you were sitting there at the table

---

[2] On re-direct examination, Petitioner testified that he acted satisfied at the time of sentencing because he was "trying to be cordial in the courtroom . . . [a]nd didn't want to be disrespectful in the court . . . ." (Docket Entry 30 at 18.)

4

during the sentencing hearing on December 16th <u>after the judge pronounced sentence and that's when you turned to Mr. Aus and you said you would like to appeal</u>. Is that what you're saying? A. Yes, sir." (emphasis added)).) Petitioner also testified that he and Mr. Aus discussed an appeal well before the date of the sentencing (while reviewing the Presentence Report) and Mr. Aus "was kind of like it wouldn't be no use for [Petitioner] to put in no appeal and [Petitioner] told [Mr. Aus] [Petitioner] still wanted to appeal and that's when [Mr. Aus] said he would come to speak with [Petitioner]." (<u>Id.</u> at 12.)

The United States thereafter called Mr. Aus. (<u>See</u> <u>id.</u> at 23.) Mr. Aus testified that:

1) Mr. Aus has 30 years of experience as an attorney, primarily representing state and federal criminal defendants (<u>see</u> <u>id.</u>);

2) before the sentencing date, Mr. Aus met with Petitioner to review the Presentence Report and, although "not happy about [the sentencing range, Petitioner] wasn't upset about it either" (<u>id.</u> at 27);

3) at that meeting, "the issue of appeal was never raised to [Mr. Aus,] . . . [t]here was no conversation with [Petitioner] in [Mr. Aus's] review of the [P]resentence [R]eport about an appeal . . . [a]nd [Petitioner] didn't request one at that point" (<u>id.</u>);

5

4) Mr. Aus subsequently "did meet with [Petitioner] just prior to the sentencing on that day" (id.; see also id. at 28 ("I customarily try to meet with my clients before just to remind them this is how this is going -- the procedure is going to be, if they have something to say; and also I point out about the judge will probably indicate that you have a right to appeal your sentence and it has to be done within the 14 days and things of that nature."));

5) on the date of sentencing, at no point, before or after imposition of sentence, did Petitioner ask Mr. Aus to appeal and, "if he had, [Mr. Aus] would have done it" (id. at 28-29 ; see also id. at 29 ("It's no big deal. I do them all the time.");

6) Mr. Aus did not meet with Petitioner after sentencing "to discuss the subject of an appeal" because he had "no reason to" (id. at 29);

7) nor did Mr. Aus ever receive any communication from Petitioner requesting an appeal (see id. at 31).[3]

---

[3] Mr. Aus identified a copy of a letter (which he hand-delivered to the local jail at which he understood Petitioner then remained housed) stating: "Enclosed is a copy of the judgment in your case that was filed on Friday, January 3rd, 2014. If you wish to appeal this order, I must receive written notice from you before January 17th, 2014. Given, however, that you entered in a plea agreement and that Judge Eagles appears to have made no errors in sentencing you, I cannot advise you to proceed with any appeal. I wish you the best in your future endeavors." (Docket Entry 30 at 30-31.) Petitioner previously had submitted documentation from the jail in question showing that he actually had transferred out prior to the date of Mr. Aus's delivery of the letter and that he had not returned to that jail. (Id. at 22-23.) As the United States
(continued...)

6

"Once [a federal criminal defendant] unequivocally instruct[s] his attorney to file a timely notice of appeal, his attorney [i]s under an obligation to do so." United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). As described above, a conflict exists in the evidence as to whether Petitioner "unequivocally instruct[ed] his attorney to file a timely notice of appeal," Poindexter, 492 F.3d at 269. The Court should credit Mr. Aus's testimony denying any such instruction over Petitioner's inconsistent testimony to the contrary.

First, the record (discussed above) reflects that, at the evidentiary hearing, Mr. Aus testified consistently with the sworn statement he submitted before the hearing. By contrast, Petitioner's pre-hearing filings and hearing testimony (set out in the preceding discussion) varied widely and lacked internal consistency. Such considerations "severely, if not completely,

---

[3](...continued)
observed at the hearing: "The letter shows that Mr. Aus had not been told to file an appeal. Why would he send the letter otherwise if he had been asked and was aware that [Petitioner] wanted an appeal? The letter corroborates Mr. Aus's version and whether or not [Petitioner] got it is really not relevant. It shows that Mr. Aus had not been asked to appeal but was clarifying on the final occasion whether or not [Petitioner] wanted to appeal. He just wouldn't have sent the letter if [Petitioner] had been -- his version of what happened had been accurate." (Id. at 40.)

7

erode[]" his credibility. <u>Diaz v. United States</u>, Nos. 7:09CR100D, 7:11CV43D, 2014 WL 7384974, at *7 (E.D.N.C. Dec. 29, 2014) (unpublished). Further, "there is no evidence that [Petitioner's former attorney] had any motive to refuse any request by [him] to file an appeal . . . ." <u>Id.</u> at *6. Petitioner, however, "had a strong incentive to lie . . . about his purported request for an appeal. That claim represents perhaps the only remaining avenue open to [him] to escape service of [his] prison term . . . ." <u>Id.</u> at *8. Finally, Mr. Aus possesses substantial experience as a criminal defense attorney (such that he would know of his obligation to appeal if so directed) and testified in a straight-forward manner about his interactions with Petitioner. Those circumstances support crediting his testimony. <u>See</u> <u>id.</u> at *5.

## CONCLUSION

Petitioner has failed to establish that his former attorney provided ineffective assistance regarding an appeal.

**IT IS THEREFORE RECOMMENDED** that Ground One of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Docket Entry 16, ¶ 12(Ground One)) be denied without issuance of a certificate of appealability based on the following findings of fact and/or conclusions of law:

1) in Ground One, Petitioner asserts a claim for ineffective assistance of counsel only for failure to file a timely notice of appeal when instructed to do so and does not state a claim for

8

ineffective assistance of counsel for failure to consult about whether to pursue an appeal;

2) Petitioner did <u>not</u> unequivocally instruct his counsel to file a timely notice of appeal and thus Petitioner's failure-to-appeal, ineffective assistance of counsel claim fails for lack of merit; and

3) if Ground One had asserted a failure-to-consult, ineffective assistance of counsel claim, that claim would fail for lack of merit because Petitioner has conceded that his former counsel consulted with him about whether to pursue an appeal.

> /s/ L. Patrick Auld
> **L. Patrick Auld**
> **United States Magistrate Judge**

August 27, 2015